David LOPEZ, Appellant

v.

The STATE of Texas, Appellee.

No. 03-92-00304-CR.

Court of Appeals of Texas, Austin.

Feb. 13, 1997.

Terrence W. Kirk, Law Office of Joseph A. Turner, Austin, for appellant.

Ronald Earle, District Attorney, C. Bryan Case, Jr., Assistant District Attorney, Austin, for appellee.

Before CARROLL, C.J., and KIDD and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

A Travis County jury found appellant guilty of murder and sentenced him to life imprisonment. In 1994, we affirmed his conviction, but the court of criminal appeals reversed and remanded the cause to us to determine whether evidence erroneously admitted at trial constituted harm under Rule of Appellate Procedure 81(b)(2). Because we conclude beyond a reasonable doubt that this evidence made no contribution to appellant's conviction or sentence, we will affirm the judgment of conviction.

## BACKGROUND

Lopez was indicted for murder on February 4, 1988, and was convicted and sentenced to life imprisonment. On appeal, this Court reversed the conviction because of prosecutorial misconduct during closing argument. *Lopez v. State,* 793 S.W.2d 738 (Tex.App.— Austin 1990), *pet. dism'd, improvidently granted,* 810 S.W.2d 401 (Tex.Crim.App. 1991). On remand, a second trial was held. A jury again found appellant guilty of murder and assessed punishment of life imprisonment. Appellant appealed that conviction to this Court, and we affirmed the conviction. *Lopez v. State,* No. 03–92–304–CR (Tex.App.—Austin Aug. 31, 1994) (not designated for publication). The court of criminal appeals granted appellant's petition for discretionary review and affirmed in part and vacated in part this Court's judgment. Specifically, the court determined that the trial court erred in admitting evidence of appellant's prior misconduct. *Lopez v. State,* 928 S.W.2d 528, 532 (Tex.Crim.App.1996). The court of criminal appeals remanded the

cause to this Court to conduct a harm analysis of the erroneously admitted evidence. *Id.* at 535.

## DISCUSSION AND HOLDING

The complained-of evidence concerns a strange incident involving Lopez and his ex-girlfriend, Bobby Kopp, who lived with her parents at the time.[1] Kopp was dating appellant's roommate, Perry Durkee; she eventually married Durkee and they both testified at the trial. On the day in question, Kopp called and asked appellant or Durkee to give her a ride because she could not use her parents' car. Durkee was not available, so Lopez went to Kopp's parents' house to give her a ride. When he knocked on her door, Kopp told him to come in; she was in the bathroom brushing her hair. Lopez entered the home, went into Kopp's bedroom, took off his clothes, and climbed into her bed. According to Kopp, she came out of her bathroom, saw appellant in her bed, laughed at him, and told him to get out of her bed. She told him she would walk around the block while he left; when she returned, Lopez was gone. Kopp interpreted this behavior as Lopez's attempt to say, "Let's get back together." She stated she was never frightened, never considered herself in danger, and did not call her parents or her boyfriend. In fact, she went to Lopez and Durkee's apartment immediately after this happened. She testified that Lopez was embarrassed, but he and Durkee worked things out, and they all laughed about it. Durkee described Lopez's actions as "inappropriate" and claimed that he and Lopez had ingested hallucinogenic mushrooms earlier the same day. There was no evidence that Lopez acted aggressively or violently before or after Kopp told him to get out of her bed.

The State argued that evidence of this strange episode was admissible to show a motive for the brutal murder of Cydney Myers. Both this Court and the court of criminal appeals rejected that argument in the absence of any evidence that appellant

---

1. The evidence elicited in the second trial was essentially the same as in the first trial. Those facts are set forth in detail in this Court's opinion reversing the first conviction. *See Lopez v. State,* 793 S.W.2d 738, 739–40 (Tex.App.—Austin 1990), *pet. dism'd, improvidently granted,* 810 S.W.2d 401 (Tex.Crim.App.1991).

was under the influence of drugs at the time of the murder. However, in our first review of this trial, we held the evidence of appellant's having jumped into his ex-girlfriend's bed unclothed was admissible to impeach his testimony that he did not behave strangely when under the influence of certain drugs, like mushrooms. The court of criminal appeals reversed and held that the evidence was inadmissible when appellant's denial of strange behavior was not volunteered but rather came in response to "prompting and maneuvering" by the State. *See id.* at 531–32. Our task on remand is to determine whether the error in admitting evidence of this episode was harmful.

When the record reveals error in the proceedings below, the appellate court must reverse the conviction unless it determines beyond a reasonable doubt that the evidence made no contribution to the conviction or to the punishment. Tex.R.App. P. 81(b)(2). *Harris v. State* directs us to examine the source of the error, the nature of the error, whether or to what extent it was emphasized by the State, and its probable collateral implications. 790 S.W.2d 568, 587 (Tex.Crim. App.1989). We are to consider how much weight a juror would probably place upon the error and whether declaring the error harmless would encourage the State to repeat it with impunity. *Id.* Our responsibility is to determine whether the trial was essentially fair or whether the magnitude of the error "disrupted the jurors' orderly evaluation of the evidence." *Id.* at 588.

While the State was the source of the error, the nature of the error is not "inherently inflammatory." That Lopez once jumped uninvited into an old girlfriend's bed is not the kind of slur or taint that would make it difficult for the jury to properly evaluate the rest of the evidence. Of course the State should not improperly inject irrelevant evidence of any kind, but we do not find that this inadmissible evidence deprived appellant of an essentially fair trial. The factual circumstances of this incident are in no way analogous to the factual circumstances surrounding the murder. Kopp was not the murder victim, there is no evidence the murder occurred in a bed, and more importantly, there is no evidence the murder occurred while appellant was under the influence of any drug.

Lopez argues that the sexual aspect of his behavior with his former girlfriend might have suggested to the jurors a motive that was otherwise missing for the brutal murder of Cydney Myers, whose body was raped and sodomized. We disagree. Any connection between jumping uninvited into an old girlfriend's bed and brutally murdering then sodomizing another woman's body is too attenuated to have disrupted a reasonable juror's orderly evaluation of the evidence. In contrast to the violent murder of which appellant was convicted, the incident with Kopp did not involve mean or abusive behavior. Thus, it did not provide any evidence of an aggressive character on appellant's part. Additionally, there is no evidence that Kopp felt threatened or feared for her safety because of appellant's presence in her bedroom. Rather, she laughed and walked out, regarding the incident as silly or ridiculous, not threatening or imposing.

The State did refer to the Kopp incident twice in its closing argument, but the motive it emphasized was connected to appellant's use of drugs. Lopez contends that he was harmed by the collateral implications of this evidence in conjunction with the evidence of his extensive drug use. However, both this Court and the court of criminal appeals have held that appellant waived any complaint about evidence of drug use when defense counsel introduced it through the victim's boyfriend's testimony. The implications of Lopez's behavior on this one occasion do not heighten the effect, if any, of the existing evidence of Lopez's drug use. With or without knowledge of the Kopp incident, the jury can be credited with common knowledge that people may act strangely if they ingest hallucinogenic mushrooms or other mind-altering substances. Moreover, where there was no evidence that appellant committed the murder while under the influence of drugs, this evidence of Lopez's curious behavior after ingesting mushrooms would not tend to show that appellant was more likely to have committed the murder.

A harm analysis under *Harris* must be based on the facts and the circumstances of the particular case. We conclude that declaring the error harmless in the factual context of this trial would not encourage future prosecutors to repeat such an error with impunity.

Having reviewed the evidence as a whole, and the nature of this error, we are convinced that this appellant was not deprived of a fair trial. The Bobby Kopp incident provided no evidence of any character trait that the jury could have used against appellant in finding him guilty of the murder or sentencing him to life imprisonment. We therefore conclude beyond a reasonable doubt that the erroneously admitted evidence made no contribution to appellant's conviction or sentence. *See* Tex.R.App. P. 81(b)(2); *see also Lopez*, 928 S.W.2d at 539 (Keller, J., concurring and dissenting).

## CONCLUSION

Having found the erroneously admitted evidence harmless beyond a reasonable doubt, we affirm the judgment of conviction and sentence.